NOT DESIGNATED FOR PUBLICATION

| | | |
|---|---|---|
| **BARRETT & BARRETT, CPAS, APC AND ROBERT C. BARRETT, JR., CPA** | * | **NO. 2019-CA-0402** |
| | * | |
| | | **COURT OF APPEAL** |
| **VERSUS** | * | |
| | | **FOURTH CIRCUIT** |
| **THE STATE BOARD OF** | * | |
| **CERTIFIED PUBLIC** | | **STATE OF LOUISIANA** |
| **ACCOUNTANTS OF** | * * * * * * * | |
| **LOUISIANA, DARLA M. SAUX, CPA, MICHAEL A. THAM, CPA, MICHAEL BERGERON, CPA, MICHAEL B. BRUNO, CPA, MARK P. HARRIS, CPA, DESIREE W. HONORE, CPA, LETTI LOWE-ARDOIN, CPA AND LISA BENEFIELD, COMPLIANCE INVESTIGATOR** | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2016-05357, DIVISION "B-1"
Honorable Rachael Johnson,
* * * * * *
**Judge Roland L. Belsome**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Regina Bartholomew-Woods, Judge Dale N. Atkins)

Robert C. Barrett, Jr.
ATTORNEY AT LAW
5329 Dijon; Suite 106
Baton Rouge, LA 70808

      COUNSEL FOR PLAINTIFF/APPELLANT

Eric J. Derbes
THE DERBES LAW FIRM, L.L.C.
3027 Ridgelake Drive
Metairie, LA 70002

      COUNSEL FOR DEFENDANT/APPELLEE

              **AFFIRMED**
              **NOVEMBER 27, 2019**

This is an appeal from the trial court's judgment upholding the decision of the State Board of Certified Public Accountants ("Board") to impose certain disciplinary sanctions against Appellants, Barrett and Barrett, CPAs, APC and Robert C. Barrett, Jr., CPA. For the following reasons, we affirm.[1]

**FACTS AND PROCEDURAL HISTORY**

Appellants' disciplinary sanctions stem from a complaint made by Arthur and Deanna Jones in March of 2014. They alleged that they had not received copies of tax returns and/or corresponding tax documents between 2008 and 2012. They also claimed Mr. Barrett failed to respond and communicate in connection with the missing documents. Following an investigation conducted by Compliance Investigator Lisa Benefield, an administrative complaint was filed against Appellants.[2] The complaint included eleven alleged violations of the Louisiana Accountancy Act and the Board's Rules of Professional Conduct.[3]

---

[1] This appeal is not designated for publication. Once all parties have fully exercised their appellate rights, either party may move to have the opinion published.

[2] The violations alleged provide grounds for the Board to suspend, revoke, or impose probationary or other restrictions on Mr. Barrett's CPA certificate and/or his CPA firm permit. *See* La. R.S. 37:79(A)(5) and (B).

[3] The eleven violations included:

1

The administrative hearing was initially set for July 28, 2015. However, Mr. Barrett was granted two continuances. On January 26, 2016, the chairman of the Board, Mr. Michael Tham, denied a third continuance before the Board proceeded without Appellants.

After an adjudication hearing, the Board took the matter under advisement. Later, it issued a decision finding violations on all eleven counts. Appellants were formally reprimanded, fined $11,000.00, and the Board's findings were ordered to be forwarded to the Society of Louisiana CPAs, the Baton Rouge Advocate for publication, the Louisiana Attorney Disciplinary Board,[4] and the National Association of State Boards of Accountancy Licensee Database. Later, the Board denied Appellants' motion for rehearing.

In response to the Board's decision, Appellants filed a petition for judicial review in Orleans Parish Civil District Court. The trial court granted an exception

---

1. Mr. Barrett's failure to respond to Board Communication dated May 29, 2014 is in violation of La. Admin. Code Title 46:XIX § 1707(H).

2. Mr. Barrett's failure to respond to Board Communication dated July 22, 2014 is a second violation of La. Admin. Code Title 46:XDC § 1707(H), as quoted above in paragraph 18.

3. Mr. Barrett's failure to respond to Board Communication dated December 15, 2014 is a third violation of La. Admin. Code Title 46:XK § 1707(H), as quoted above in paragraph 18.

4. Mr. Barrett's repeated failure to respond to Board Communications constitutes a failure to cooperate with the Board's investigation, in violation of La. Admin. Code Title 46:XDC § 1707(J).

5. Mr. Barrett's late responses to Board Communications dated March 27, 2014, October 3, 2014 and March 31, 2015 constitutes a second, third and fourth violations of La. Admin. Code Title 46:XIX § 1707(J) as quoted above in paragraph 21.

6. Mr. Barrett's failure to respond to Mr. and Mrs. Jones in a timely manner is in violation of La. Admin. Code Title 46:XIX §1707(A)(8).

7. Mr. Barrett's delay in responding to Mr. and Mrs. Jones in a timely manner constitutes a second violation of La. Admin. Code Title 46:XIX §1707(A)(8) as quoted in paragraph 23.

8. Mr. Barrett's failure to return Mr. and Mrs. Jones' records in a timely manner is in violation of La. Admin. Code Title 46:XK §1705(B)(l)(c), §1705(C)(3) and §1705(E).

9. The above described actions of Mr. Barrett represent acts which bring dishonor, or are detrimental to the profession, in violation of La. Admin. Code Title 46:XK §1707(A)(11).

[4] Mr. Barrett is also an attorney.

of no cause of action filed by the Board and its members; however, it afforded

Appellants the opportunity to amend its petition to state a cause of action.

Appellants then filed an amended petition.[5]  After a review hearing, the trial court

affirmed the Board's decision and dismissed Appellants' petition.  This appeal

followed.

## STANDARD OF REVIEW

When reviewing an administrative decision, the district court functions as an

appellate court.  Since no deference is owed by the appellate court to the district

court's fact findings or legal conclusions, the appellate court need only review the

findings and decision of the administrative agency.  *Garber v. City of New Orleans*

*Through City Planning Comm'n*, 16-1298, p. 6 (La. App. 4 Cir. 12/13/17), 234

So.3d 992, 997 n.7, *writ denied sub nom.*, 18-0351 (La. 4/20/18), 240 So.3d 924

(citation omitted).

"'The standard of appellate review of an administrative agency's decision is

distinct from and narrower than that which applies to ordinary civil and criminal

appeals.'" *Reaux v. Louisiana Bd. of Med. Examiners*, 02-0906, pp. 2-3 (La. App.

4 Cir. 5/21/03), 850 So.2d 723, 726 (quoting *Holladay v. Louisiana State Board of*

*Medical Examiners*, 96-1740, p. 4 (La. App. 4 Cir. 2/19/97), 689 So.2d 718, 721).

The exclusive grounds upon which an administrative agency's decision may be

reversed or modified on appeal are enumerated in La. R.S. 49:964(G) of the

---

[5] The amended petition included a bad faith claim against the Board members individually. Given that the Board had immunity from personal liability, the trial court granted the Defendants' exception of no cause of action and dismissed the individual claims against the Board members.

Administrative Procedure Act ("APA").[6] *Armstrong v. Louisiana State Bd. of Medical Examiners*, 03-1241, pp. 9-11 (La. App. 4 Cir. 2/18/04), 868 So.2d 830, 837-38.

The imposition of an administrative sanction is in the nature of a disciplinary measure, and we will not set aside an administrative agency's decision to impose a particular sanction unless that decision is arbitrary, capricious, or an abuse of discretion. *Armstrong*, 03-1241 at p. 10, 868 So.2d at 838. Pursuant to La. R.S. 49:956(3), an "agency's experience, technical competence, and specialized knowledge may be utilized in the evaluation of the evidence." Accordingly, upon review of administrative actions, we recognize "the strong presumption of validity and propriety in such administrative actions where casting judgment upon the professional behavior of a fellow member of a profession is a matter peculiarly within the expertise of an agency composed of members of that profession." *Armstrong*, at pp. 10-11, 868 So.2d at 838 (citation omitted).

---

[6] La. R.S. 49:964(G) provides that a court can reverse an agency's decision if an appellant's substantial rights have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.

## DISCUSSION

Although Appellants raise numerous assignments of error on appeal, we organize our analysis around three rulings: 1) the denial of the motion to continue; 2) the Board's final decision; and 3) the denial of motion for rehearing.

## MOTION TO CONTINUE

First, Appellants assert that the Board erred in denying their third, untimely motion to continue. They argue that they established good cause for a continuance, which the Board refused to consider due to its prior determination that no further continuances would be granted.

LAC 46:XIX, §1909(H) states:

> Motions for continuance of hearing, for dismissal of proceeding, and all other prehearing motions shall be filed not later than 10 days prior to the date of the hearing. … For good cause shown, the board chair or presiding officer may waive or modify these requirements. …

In this case, Appellants were previously granted two untimely continuances. At the last continuance, Mr. Michael Tham stated that no other continuance would be granted. The hearing was re-set for January 26, 2016. On January 25, 2016, Mr. Barrett sent an electronic mail (e-mail) request for a continuances, which was denied. On the morning of the hearing, Mr. Barrett submitted a formal, written motion to continue the hearing. Counsel for the Board orally opposed the motion on the record. After considering the motion and the opposition, Mr. Tham denied the motion in open executive session. As a result, the Board proceeded with the hearing without Appellants.

In his e-mail request for a continuance, Mr. Barrett stated that he was involved in an automobile accident on January 19, 2016. As a result, he was placed on medications that prevented him from driving. Ms. Benefield responded that the Board would need a doctor's note confirming he was unable to testify; however, she would forward the request to Mr. Tham. She later responded that Mr. Tham denied the motion to continue.

In his written motion for a continuance, Mr. Barrett stated that he was out of town, in Washington D.C., and returned late due to a winter storm. In addition, he attached the emergency room discharge records from his January 19, 2016 accident. The records reflect that he was prescribed medication, as needed, for only five days. Moreover, there were no additional restrictions indicated.

Despite Appellants argument, the record reflects that Mr. Tham considered their third untimely motion to continue and the opposition before denying it. Moreover, since the medical records do not reflect that Mr. Barrett was prescribed medication beyond January 25, 2016, and there were no other restrictions listed, Appellants did not establish good cause to continue the administrative hearing set for January 26, 2016. For these reasons, the Board did not abuse its discretion in denying Appellants' third untimely motion to continue.

**BOARD'S FINAL DECISION**

Next, Appellants claim that the Board erred in making incorrect findings of fact and conclusions of law. Therefore, he argues there were no grounds for discipline. We disagree.

6

A court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

…

(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review.

La. R.S. 49:964(G)(6). Given the jurisprudential presumption of correctness, the appellant "has the burden of proving the record contains no facts to establish the validity of the charges levied against him." *See Armstrong*, *supra*.

The record reveals that on March 5, 2014, the Board received a complaint against Mr. Barrett from Mr. and Mrs. Jones, alleging that they had not received copies of tax returns and/or corresponding tax documents between 2008 and 2012. They also claimed he failed to respond and communicate in connection with the missing documents.

Ms. Benefield was assigned to investigate the complaint. As such, on March 27, 2014, she sent Mr. Barrett an initial notice of the complaint. The notice included a request for a response within fifteen days, but no later than April 11, 2014. On April 15, 2014, the Board received Mr. Barrett's response dated April 11, 2014. Mr. Barrett also mailed Mr. and Mrs. Jones a copy of their 2012 tax returns, which included a notice that he possessed additional tax information that he would copy and return "shortly." On May 22, 2014, after not receiving the promised documents, Mr. and Mrs. Jones sent a certified letter to Mr. Barrett requesting copies of their federal and state tax returns from 2008-2011, and the original source documents from 2008-2012.

7

Meanwhile, on May 29, 2014, Ms. Benefield mailed a follow-up letter, requesting additional documentation within thirty days, including copies of tax returns and records. Since the Board received no response to the May 29th letter, Ms. Benefield sent a second certified letter on July 22, 2014, which was received by Mr. Barrett on July 31, 2014. On the same day, Mr. and Mrs. Jones sent another request for their tax documentation.

Having not received a response to the Board's last two letters, Ms. Benefield sent a third certified letter to Mr. Barrett on October 3, 2014.[7] The letter stated that if a response was not received by October 15, 2014, Mr. Barrett would be unable to renew his CPA license and Firm Permit until a response was received. The Board received Mr. Barrett's response on October 20, 2014, which again stated that he would return Mr. and Mrs. Jones' source documents "shortly after" the October 15, 2014, tax deadline.

Later, on December 15, 2014, after being informed that Mr. and Mrs. Jones still had not received their documents, Ms. Benefield mailed, via certified mail[8], another written demand to Mr. Barrett concerning the documents. She gave him ten days to send the documents "via certified mail with delivery confirmation." Neither the Joneses, nor Ms. Benefield received a response to the December 15, 2014, correspondence.

On February 6, 2015, Ms. Benefield sent Appellants a notice informing them that she had not received a response to her December 15, 2014 correspondence and that a formal Administrative Complaint may be filed. Mr. Barrett mailed a timely

---

[7] The certified return receipt reflects that Mr. Barrett received the letter on October 6, 2014. In addition, the correspondence was sent via facsimile and e-mail.

[8] The return receipt reflects that Mr. Barrett received the correspondence on December 18, 2014. In addition, the correspondence was sent via e-mail.

response indicating that he responded to the December 15, 2014 correspondence. He attached two letters[9] dated December 31, 2014, which indicated that he returned specific tax documents to Mr. and Mrs. Jones. He also included an unsigned certified return receipt affiliated with the letter he allegedly sent to Mr. and Mrs. Jones. However, the United States Postal Service website indicated that the tracking information could not be located. He also indicated that he sent their incomplete tax records (2010-2012) via Federal Express on February 20, 2015.

Finally, on March 31, 2015, Ms. Benefield sent a letter demanding that a complete copy of the 2008-2011 tax returns and records be sent to Mr. and Mrs. Jones within fifteen days. In addition, Mr. Barrett was to provide her with the tracking number for the package. The Board, again, received a late response on May 4, 2015, which included a letter and Federal Express air bill indicating that the complete tax returns and records were sent. Mr. Jones confirmed that he received the complete records in mid-April 2015.

After considering the record evidence and testimony, the Board found violations on all eleven counts. The violations consisted of three categories: 1) communications with the Board, 2) communications with Mr. and Mrs. Jones, and 3) professional misconduct. First, as it pertains to the Board communications, there are seven violations concerning communication and cooperation with the Board. The first three counts pertain to Mr. Barrett's failure to communicate with the Board, on three separate occasions, in violation of LAC 46:XIX, §1707(H).[10]

LAC 46:XIX, §1707(H) states:

---

[9] One letter was addressed to Ms. Benefield and the other to Mr. and Mrs. Jones.
[10] Due to an amendment to the rules in this title on October 20, 2017, the substance of §H is now located in §D.

Communications. A holder of a certificate or firm permit, or an individual in inactive or retired status shall, when requested, respond to communications from the board in the manner requested by the board within 30 days of the mailing of such communications by certified mail, or by such other delivery methods available to the board.

Here, the record establishes that Mr. Barrett did not respond to the Board's requests within thirty days of its May 29, July 22, and December 15, 2014 communications. Accordingly, the evidence was sufficient to establish violations on these three counts due to Mr. Barrett's failure to timely respond.

The next four counts involve Mr. Barrett's failure to cooperate with the Board's investigation. LAC 46:XIX, §1707(J)[11] states:

 Cooperation with Board Inquiry or Investigation. A licensee or CPA inactive status registrant shall fully cooperate with the board in connection with any inquiry or investigation made by the board. Full cooperation includes, but is not limited to, fully responding in a timely manner to all inquiries of the board or representatives of the board and claiming board correspondence from the U.S. Postal Service and from other delivery services used by the board.

In this case, the record reflects that Mr. Barrett failed to fully and timely respond on the three aforementioned occasions. In addition, he failed to fully and/or timely respond to Board communications on March 27, 2014, October 3, 2014, and March 31, 2015. Under these circumstances, the Board's determination concerning four additional violations for failing to cooperate with the investigation are supported by a preponderance of the evidence.

Second, with respect to communication with Mr. and Mrs. Jones, the Board found two violations for failing to respond to the Joneses in a timely manner and one violation for failing to return their records in a timely manner.

LAC 46:XIX, §1707(A)(8)[12] states:

---

[11] Due to an amendment to the rules in this title on October 20, 2017, the substance of §J is now located in §F.

…

Conduct reflecting adversely upon the licensee's fitness to perform services, within the meaning of R.S. 37:79.A(8), includes but is not limited to the following:

8. repeated failure to respond to a client's inquiry within a reasonable time without good cause;
…

In addition, LAC 46:XIX, §1705[13] states, in pertinent part:

B. Records.
1. A licensee shall furnish to his client or former client upon request:
…
c. any accounting or other records belonging to, or obtained from, or on behalf of, the client which the licensee removed from the client's premises or received for the client's account, but the licensee may make and retain copies of such documents when they form the basis for work done by him;
…

C. Fee for issuing and reproducing records, format, timely response, and record retention period.
3. The requested information shall be furnished by the licensee to the client in a timely manner.

E. In all cases, the client's records, described in §1705.B.1.c., must be returned upon request by the client. If an engagement is terminated prior to its completion, unless the licensee and client otherwise agree to modify the engagement, the licensee is required to return only client records.

Here, the record reflects that Mr. and Mrs. Jones made numerous attempts to communicate with Mr. Barrett in order to obtain copies of tax returns and records. They eventually retained another CPA for 2013 in order to get their tax issues resolved, because their taxes had not been filed in 2010 and 2012, and they could

---

[12] Due to an amendment to the rules in this title on October 20, 2017, the substance of §1707(A)(8) appears to have been removed.

[13] Due to an amendment to the rules in this title on October 20, 2017, §1705 appears to have been removed in its entirety.

not obtain the original documents from Mr. Barrett. Mr. Barrett continuously failed to respond or responded late.

After filing the instant complaint, Mr. and Mrs. Jones sent a request for tax returns and records on May 22, 2014. While Mr. Barrett asserts that he responded to Mr. and Mrs. Jones on June 8, 2014, directing them to come to his office to pick up their documents, their July 22, 2014 letter does not indicate they received a response. On July 22, 2014, they requested the records again, to no avail. On October 3, 2014, Mr. Barrett promised to return the records "shortly" after the approaching October 15th tax deadline. However, Mr. and Mrs. Jones did not receive a complete copy of the requested records until mid-April of 2015. Given these facts, the record supports the conclusion that Mr. Barrett committed three violations concerning his failure to timely respond and return records to Mr. and Mrs. Jones.

Third, the Board determined that Mr. Barrett's aforementioned violations constituted professional misconduct: "conduct that brings dishonor, or is detrimental, to the profession[,]" in violation of LAC 46:XIX, §1707(A)(11).[14] In light of the foregoing violations, the Board's finding is amply supported by the evidence.

While the Appellants raise numerous issues concerning incorrect testimony, the testimony was undisputed. Moreover, the documentary evidence, alone, was sufficient to support the charged violations. Given that the record supports the Board's decision, we find the evidence sufficient to support the Board's disciplinary sanctions on all eleven violations.

---

[14] Due to an amendment to the rules in this title on October 20, 2017, the substance of §1707(A)(11) appears to have been removed.

## MOTION FOR REHEARING

Finally, Appellants argue that the trial court erred in denying their motion for rehearing because they established good cause for Mr. Barrett's failure to attend the hearing due to his accident and medications. In addition, they claim that the findings of fact and conclusions of law were incorrect. La. R.S. 37:81(I) states:

> If, after service of a complaint and notice of hearing, the respondent fails to appear at the hearing, the board may proceed to hear evidence against the respondent and may enter such order as it deems warranted by the evidence, which order shall be final unless the respondent petitions for review. However, within ten days from the date of such order upon a showing of good cause for the respondent's failure to appear and defend, the board may set aside the order and schedule a new hearing on the complaint.

As discussed above, since there was no good cause for a continuance, and the findings of fact and conclusions of law were supported by the record, a rehearing was not warranted.

Further, in its brief, the Board requested costs and attorney's fees for this appeal. Accordingly, we award the Board additional attorney's fees and costs in the amount of $1,125.50.

## CONCLUSION

Given that Appellants did not establish good cause, we find that the Board did not abuse its discretion in denying their request for a continuance. Additionally, based on a review of the record before us, we cannot say that the Board's decision to impose disciplinary sanctions against Appellants was arbitrary, capricious, or an abuse of discretion. Accordingly, the trial court's judgment upholding the decision of the Board is affirmed. Further, the Board is awarded $1,125.50 in additional costs and attorney's fees.

**AFFIRMED**